All right, our final case this morning is number 16-1901, Google, Inc. versus Simple Air, Inc. Now, the panel has decided we're going to hear separately the standing and mootness argument and then we'll go to the merits. So we'll give you five minutes each on the standing and mootness argument. We read the motion to dismiss that we received this morning, so Mr. Wright, why don't you start with that? May it please the Court, John Wright on behalf of the appellant, Google was the IPR petitioner below. So if you wanted to moot this case, why don't you just give them a covenant not to sue ever on the 154 that would cover Google and its customers? So I think we've got it reversed there. I think Simple Air would have to provide that to Google. I'm sorry. Is your argument that without that covenant that there's no mootness? Without that argument, Google retains Article 3 standing. Because of what? Because Google faces, well, I think there are two reasons that work together to give Google Article 3 standing or maintain its Article 3 standing. So the first is the background, the course of conduct over the litigation below, which really started in 2011, and has shown that from then through till now, Simple Air has  No, wait. I'm not understanding. They're saying that in this other case, which we recently decided that it's been determined that Google's product doesn't infringe, and that you've won that issue and therefore it's moot. Sure. So to cut to that. Is your argument that it's better than a covenant, it's issue preclusion? You've got a court standing there that says you don't have to worry, you cannot be accused of infringing the 154. Right. So to cut to that specific issue, what Google does not have is any assurance that Simple Air is a product other than the 154 litigation? Yes. That's right. And this is a different product? Well, Google's position is that it's an unasserted, previously unasserted product. Google's position is that... Unasserted. Unchallenged, you mean? Unaccused. Unaccused. That's a better way to say it, yeah. So it's like you've got two products on the shelf. Is that what you're trying to tell us? There are previously unaccused Google products that Simple Air has accused, subsequently accused of infringing patents. Other patents. Other patents in this family. But what about the 154? Has it accused Google of infringing the 154 with respect to these other products? It has not, but that is the imminent injury that Google is concerned about. That provides it the concrete injury that's required by Article 3. I don't understand. If they haven't accused other products of infringing the 154, what's the case or controversy? It's the threat of infringement. Of the 154? Yes, that's right. So, for example, if Google had the ability to bring a declaratory judgment action against the 154 patent as it stands right now, then it would have Article 3 standing. Have they written to you and said that these other products are infringing the 154? No, but when you look at, and I recognize that the panel doesn't have the benefit of our opposition to the motion. We'll file that opposition no later than the end of today. They didn't move until 10 o'clock Saturday night. But, so, if you look at their motion to dismiss, what they say specifically... No, but I think you're not addressing my question. What reason do you believe, to have to believe, that they're going to sue you on the 154 as to other products not involved in the earlier case? So, I guess two specific reasons. And, of course, we'll hear from Simple Air in a second. But, in its motion to dismiss, at page 3, it said, Simple Air is barred by issue preclusion from reasserting the 154 patent against Google's previously accused system. What we have no assurance of, because Simple Air didn't have the benefit of our opposition to the motion yet. We talked to them this morning. By the way, you've got to try to answer my question. What basis do you have to believe that they're going to sue you on the 154 as to other products, or that there's a potential for such a suit? They haven't told us that they won't. And we approached them, and that sat against the backdrop of the litigation conduct between the parties, which, again, we'll spell out in detail in the motion, that they've been perfectly willing to assert patents in this family against previously unaccused products that come out. And they haven't said in their motion that they aren't going to do that. So, if they stand up and say, we will not assert the 154 patent against any of Google's products or its customers, is that going to be good enough? I think that could be good enough, yes. Let's hear from Mr. Jacobson. May it please the court. So, now that I have the right counsel, let me ask the question again. Why don't you just give them a covenant not to sue on the 154 if you want to moot this case? Your Honor, the concern is not that there's some other secret Google product that they had in the past that might infringe the 154. There's no evidence of that. But why don't you want to just give them a covenant not to sue on it? The concern is that there are other pending cases between Simple Air and Google involving other patents with different limitations. What difference does that make? The covenant not to sue could be used by Google to argue that there's an implied license in those other cases. With respect to other patents? Yes, Your Honor. No, that's a hard one. You just write the covenant not to sue. This covers only the 154 patent. That's it. We're specifically worried about this court's holding in the TransCorp case, Your Honor, where a covenant not to sue was written pretty carefully to cover only one patent. And this court held it could extend to another patent. Now, we may be able to work that out, but we need to negotiate with Google the exact language of what the covenant not to sue would say. And if we're satisfied that's not an issue, we'd be open to it. But we need to negotiate it with them. But that's your intent, I guess. I mean, that's the only way you can move this case, right? That you say to Google, we don't intend to sue you or your customers on the 154 patent ever. I mean, is that your intent? Because if you're not disclaiming that, then I don't see how they don't have standing. Let me explain why they don't have standing even before a broad covenant not to sue. The reason is that to have standing they need to identify more than a hypothetical harm. Some hypothetical lawsuit that could happen against some Google product that has not been identified. That was this court's holding in Phygenics, a hypothetical speculative harm. Yes, but the facts in Phygenics are completely different here. I mean, that was an inventor who was trying to license this product that nobody had ever licensed. And he was saying that the patentee somehow prevented that and he couldn't connect that up. You have a long history of litigation against Google with this patent and with patents in this family. It's completely different than the facts in Phygenics. The facts are different, Your Honor, but the holding is on point. And here we have a unique situation in that we have a holding of this court that precludes us by issue preclusion from suing Google's previously accused product. Its patent has expired. That means any product Google comes out from here for we can't sue them on. But it doesn't preclude you from suing them on unaccused products. And unless you're willing to say that, I don't understand, given the history of litigation, why that's not sufficient to give them standing to challenge your patent. I understand, Your Honor. Do you think Phygenics discloses or prevents that view of standing? I do, Your Honor, because Phygenics held that when an appellant is coming in and asking this court to take jurisdiction over a separate administrative proceeding, the burden is on them to show more than just a hypothetical harm in this concern that maybe there's some other... Yeah, but they had no concern about being sued for infringement. That was the problem they had in the Phygenics case. Well, any more questions? Do you have anything more to say about this, Mr. Wright? I think one thing that would be helpful to this court is that if the two of you get together and see if you can work out a covenant, if that's the intent, not to sue... So, simply, I would not sue Google on the 154 with respect to any products or any customers, and that might make the case go away. I mean, there must be some way of getting around whatever happened in Transcor, which I don't And the fear of the implied license being negotiated away. And that's your concern. We have to analyze the issue and discuss it with Google, John. Yeah, we're willing to do that. We approached counsel this morning in view of the motion to dismiss, so I think we've agreed to discuss that after the hearing. Why don't we give you... We won't issue a decision here for 30 days to give you a chance to resolve this by negotiation. Does that make sense? Yeah. Okay. Alright, so let's turn to the merits, which we may never have to reach if you can get an agreement. We'll give you 10 minutes aside. Okay, Mr. Wright. Okay. So, again, may it please the court, the board erred in limiting the claimed central broadcast server to the reception of data from a plurality of information sources when the plain language of Claim 1 unambiguously has no such limitation. Sir, your argument on the claim construction issue, because the argument here is that you never really raised that below, and so you waived it. I guess your argument is that you argued in the alternative to the board? Because you clearly, at least in the oral hearing of the board, went along with the board saying that the broadest reasonable interpretation was multiplicity of sources. So is it your view that we should view you as having made alternative arguments to the board to say, well, we really think the preferred meaning is that it's not limited, it could be one more, but if you want to go with more, it's okay with us because we think we prevailed on that ground as well. Well, not quite, your honor. It's not an alternative argument. The argument that Google put forth in its petition and the argument One sentence. I think it was more than one sentence. Google has never advocated to the board that it should construe these claims as requiring a plurality of information sources. No, but you did agree that the district court construction which required a plurality was something the board should adopt. No, your honor. I don't think that Google did that. Google made in the oral hearing, if that's the specific instance that you're referring to, Google made a general, Google's counsel made a general assertion that yes, we agree with the board's construction but when Google's counsel was specifically questioned on the plurality of information sources issue, if you just look, I think it's one page more in the hearing. I know, I've read it. So, I think that what we're talking about here is estoppel, and estoppel is there to prevent a party from taking an inconsistent position. I know they argue estoppel but I don't think it's really a question of estoppel I think it's more a question of waiver. So, if it's a question of waiver then the issue is properly before this court if the lower tribunal passed on the issue full stop, irrespective of whether it was pressed below. Now here, the tribunal ruled on the issue, it was the dispositive issue in this case I mean, you think you could have gone in front of the board in your petition and said broad and trivial interpretation as multiplicity of sources at the oral argument you could have said in case there's any doubt BTAB, we believe we are asserting multiple sources and then the board rules on that basis and you come up here and say that claim construction was wrong? Is that you believe that you can do that? No, but that's not what happened here. Well, that's what we're trying to get at. Okay, so I think that I think we have to go back to the petition and look at what Google actually said and when you go to the petition when you go to the claim construction section, so I'm at appendix 140 well, 141 sorry, yeah, 141 at the bottom that's where the claim construction section starts and it's very important that I walk you through this it says claim construction and it says A, prior related constructions. Where are you on 141? At the very bottom. 141? Appendix 141 right at the very bottom it says prior related constructions and you flip the page and it informs the board that in in an underlying proceeding a district court put down these constructions. Then we say the board may of course adopt a broader construction than those presented below. Right, and it Google presents these constructions as a baseline. The board can go no narrower than these constructions and then if you look from 143 over to 144 Google lays out four or five specific areas where the district courts. And with regard to the one in question it's on page 144 right? Right, it's on page 144. It also was essential to receive data from the information stored instead of a plurality of sources. Right, and then I think this is probably the dispositive point when you go to Google putting forth their ground of unpatentability to the board and this is at appendix it's at appendix 148 151 155 Google Okay, so it starts at appendix 148 Right, the Yon and Kane grounds if you go down about six lines it says Yon includes an information source. Okay, and then when you go to over to 151 you're pointing to Yon's information source in the drawing on page 151 Then I think the clearest application when you get to element A, this goes from 154 to 155 Google says at the top of 155 that net news, at the very last sentence of the paragraph at the top of 155, net news and information source generates this data in the form of tens of thousands of net news articles daily. When Google went to apply Yon using the unambiguous claim language to the claim it said that Yon has an information source and if there were any doubt as to Google's position, it's resolved in the district court's unambiguously relied on when it adopted these constructions and there Google unambiguously argues that it should be an information source. I'm not sure that having argued something before the district court preserves the argument before the board. Certainly the board didn't think that you were arguing about this and I don't understand that their having used the morality of sources construction somehow potentially excuses your waiver. I think you can have a waiver problem. Now that doesn't mean that we can't excuse the waiver and go ahead and decide the issue. But I think you've done a very poor job of preserving this issue in the petition and I don't think you can argue that the fact that you raised it before the district court saves it for the board. Not that it saves it for the board, but it was the same parties, it was Google and Simple Air and the board unambiguously relied on the Markman order and said that it reviewed it and said that it found it reasonable. So the board can't be under a mistaken impression here. The district court found multiplicity of sources correct? The district court adopted the construction from sorry, the board adopted the district court's construction and this error has been propagated from the district court litigation on the 154. Yes. And your client advocated multiple sources. No. Unambiguously advocated it should be a single source. Google has never advocated that this should be a plurality of sources. Even if you look at the board's institution In previous litigation? In prior litigation Google has unambiguously said this should be a single that essential I wasn't on anything. So I can point you to that in the Markman order where the district court is laying out the parties positions. What page is the Markman order on? Well I'm specifically looking at appendix 6253 as the first example This is before 154 before the case was dismissed. Yes. Between Google and Simple Error. And if you look at the first full paragraph on that page, Google asserts that issues presented by the parties differ from those in Google 1 It really says 6258 and 6259 I agree with you You argued that before the district court, but arguing before the district court is not the same as arguing before the board If we turn to the board's institution decision to show that the board understood Google's position, if we look at the institution decision at appendix 302 Appendix 302 There the board is determining whether it's going to institute trial It lays out the parties positions actually right at the top of 301. It says Google contends that NAN discloses generating data at N information source Then if you come over to 302 Simple Error makes its argument and the board says that we're not persuaded. Simple Error's arguments are not persuaded in view of our interpretation of central broadcast server. Now this is a little bit confusing when you read this because there's certainly a tension between the board's construction adopted construction and what it says here, but it says that each server can receive data from one or more sources. Claim 1 recites a message to transmit data from an source to 302 generating data at the information source, again italicized, wherein the information source is associated with an online service relating to generated data. And you read that and you think, okay, the board gets it and it went on to institute over again and once it did that, Google did what most petitioners do is they said, well we think the board got it wrong here, maybe it understands it, maybe it doesn't, there's a tension, but we're going to proceed over the course of the trial as if it were a plurality of sources because Google wins either way. So Google thought it would win either way, so in its reply, Google said, okay it's like getting a Markman hearing in district court, you don't proceed the rest of the trial arguing that the claim construction was wrong. Okay, Mr. Wright, I think we're out of time we'll give you two minutes for your rebuttal. Mr. Jacobson. May it please the court, the first issue as we've been discussing is whether the board correctly construed a central broadcast server to require a multiplicity Even if Google didn't preserve this issue, we don't have to adopt the wrong claim construction, right? If we conclude that the plurality of sources claim construction is wrong under the Lubrizol case, right? You don't have to adopt the wrong claim construction, your honor, however you must find that Google did not timely present this argument below under the board's rules. Why do we have to find that they raised the argument below? In Lubrizol, the court adopted a claim construction which had not been advocated by either party and said we could do that. The board has a rule on point and it's not a discretionary rule the rule is the board cannot consider untimely raised arguments and this court's holding in Dell the acceleron was, it doesn't matter if the board considers it. That's binding on us? It is, your honor, that is binding on you. Because if you were to remand, it's binding. We have to go with a wrong claim construction because of a rule that the board adopted? You don't have to reach the claim construction, your honor because the underlying theory of obviousness was wrong because it wasn't raised properly below. So you don't reach the merits because it was waived. But that's just waiver. I mean waiver is a judicial rule for us. It's not in statute or anything. If we find the correct claim construction is theirs then we get to say that's the correct claim construction, don't we? You can, but the board can't then apply that claim construction because it wasn't timely raised by Google on its petition. Because of the board's rule, you can't raise untimely construction. The board can't waive its own rules? No, it can't. That was the holding of Dell v. Acceleron. In that case the board did decide it was going to consider an argument that was raised for the first time. So we're stuck. If we say they got the wrong claim construction, the right claim construction is X. We can't send it back to the board to apply X because they have a rule about waiver applicable to the parties? That seems a little far-fetched. The board's rule is clear on that, Your Honor. The board's rule doesn't purport to bind us. Let me address why this court should hold that waiver applies. Now, Google mentioned that this court can consider issues that were decided even if they were not raised below. The board didn't decide this issue of whether it should be a plurality or an uninformation source. The board didn't discuss the parties' positions. It didn't make factual findings. And that's because Google agreed to this construction. So you just have one sentence in the board's decision that Google agreed to the district court's construction. They said to the board that our view is the board should follow the broadest reasonable interpretation. It should be these sorts. However, if you continue with the construction of plurality that still is made obvious. This is at the oral argument. Yes, Your Honor. That was too late to raise the issue and the board didn't end up considering that argument. Well, the question is whether or not we agree with you or disagree with you on whether the issue had been raised earlier by what your adversary has pointed to us in the record that we can see. Is Your Honor referring to the one sentence in the petition? The one sentence in the petition and the other matter they just referred to. The one sentence is not sufficient because this one cursory sentence is not enough. So it's now our rule about waiver rather than the board's rule about waiver. This is what the court has held is required to raise an issue in general is more than just one sentence. I'm still puzzled. If we decide the correct claim construction can include only one, why can't we remand it to the board and say you have to consider this under the correct claim construction? It may be that we won't let the board do it on their own, but we certainly have the authority to tell the board to do something, don't we? That would be contrary to the board's rule, which is the board can't consider. Who cares about the board's rule? We're not the board. We're not bound by the board's rule. We can order the board to consider this under the proper claim construction. Like I said, it may be that the board can't sua sponte consider things not timely raised, but if we tell them you did this under the wrong claim construction and instruct them to do it, the only thing preventing them is a rule that we're telling them they're not to apply in this case. I understand, Your Honor. Let me then turn to the merits and explain why this was the rule. Wait, is your answer we can do that? I understand your points on waiver. I think you actually have some pretty good arguments for waiver, but I'm baffled by your notion that we can't tell them to do this if we disagree. I mean, I don't understand that at all. It's because of what the board's rule says, Your Honor. It says they can't consider it if they're untimely. Can I have just a related question? Let's assume that this is an argument and we decide that the broadest that the issue is not waived and that the broadest reasonable interpretation is one or more, not one or more. We send the case back. The patent is expired. What standard does our ruling on broadest reasonable interpretation govern proceedings on remand? If it was remanded, the board would have to use the Phillips construction, Your Honor, because the patent is now expired. Now, the board noted that its constructions were also consistent with the Phillips construction, so they decided this case under both using the constructions they did use. What I'm asking you is whether you believe the board is free then to disregard our interpretation of the broadest reasonable interpretation and find their own Phillips interpretation? They would be, Your Honor, unless you gave a construction that was under the Phillips interpretation as well, because this patent is now expired. Well, let's talk about the Phillips interpretation as applied to the claim language here, which it seems that plurality is not the right construction if you look at the claim language because it doesn't talk about a plurality. Let me explain why that's in the claim. Actually, let me clarify. Is Your Honor referring to the claim language that says the information source? Yeah, well, it's not just that. It's other aspects of it as well. Let me explain where this is found in the claim language. The term that the board construed is central broadcast server. The patent doesn't recite just a broadcast server. It recites a... The preamble says a method to transmit data from an information source, and then it refers later on to the information source. And then it talks about a central broadcast server. Your argument is that somehow central broadcast server overcomes that earlier language in the claim? Yes, Your Honor, because that earlier language in the claim is not talking about what a central broadcast server is. It's talking about what happens when you have a central broadcast server. You have a server that's configured to receive data from multiple information sources, and at the particular time, you just get a transmission from one particular information source. So the thing is still a central broadcast server because it's configured to receive from multiple, but the claim is written to cover a situation when just one happens to be transmitting. And there's a diagram that illustrates that situation in our response brief on page 31, where you have just a single transmission to a central broadcast server, but it's configured to receive data from multiple information sources. Your argument is central loses its plurality of inputs. Why is that necessarily so? Why can't central be regarded to the transmission, where the information is going once it's been received? It's because that would just be a broadcast server. That wouldn't be a central broadcast server. The prior argument is to have a broadcast server, you need to have the server sitting in between one content provider that gets the content, and it broadcasts it out to subscribers. That's the overcame by claiming a central broadcast server, which has multiple information sources that can send data to the central broadcast server. And this is supported by the specification as well, Your Honor. Figure 1 in the pattern on appendix page 44 shows the architecture of the system, and it shows multiple information providers sending feeds to the central broadcast server which is labeled 33. And that's repeatedly confirmed by the written description. What about the 279 patent? 279 patents in the family, right? Yes. And the 279 patent talks about a central broadcast server configured to receive data from at least one source. Meaning one or more. Which seems to suggest that a central broadcast server may have a plurality. Your Honor, I think what the 279... Let's talk about the 279. Talking about a central broadcast server, there's no indication that there's any difference between any of the central broadcast servers in the 279, the 154, the 914, or the 433, right? No, I don't believe so. The specs are all the same, right? Yes, Your Honor. Okay. So that's why I raised this, because it's perfectly clear that in the 279 and in Claim 1, the central broadcast server is configured to receive data from at least one source. I believe that we addressed this exact argument in our claim construction briefing in the 279, and that's why the judge below ultimately constructed... But doesn't that mean that a central broadcaster... Doesn't that mean that a central broadcast server can have only one information source? No, it doesn't, Your Honor. Why not? That would read central out of the claim. Why? Because in the 279 patent it specifically says a central broadcast server can have one source. I believe it says a central broadcast server is capable of receiving data from one information source. It's not the same as configured to. Our argument is set out very clearly. If it's configured to receive from at least one, that means it can receive from only one. If it is configured to receive from at least one. But it has to be configured to receive from multiple, Your Honor. To be a central broadcast server. And there is a difference in... Then the central broadcast server that is configured to receive one, if it's only one, is not a central broadcast server? If I understand your question, if you construe a central broadcast server to be... I'm still looking at the 279. Yeah. And you're saying if it's configured to receive only one, it's not a central broadcast server? Yes, Your Honor. Yes. And we explain that difference in the markment for the 279 and Judge Gilstrap addresses that difference. There is a distinction there between the 279 and the 154. Okay. Thank you, Mr. Jacobson. Mr. Wright. I'd like to address the establishment... No, you're out of time. Thank you. Just a couple of very quick points. Google is... Can I just ask you about the CRI Phillips stuff? Yes. Do you agree that if it goes back to the board, they would have to use the Phillips standard? I think they would have to use the Phillips standard. So it would be pointless for us to decide what's the proper BRI standard. Well, I think that you could say that the standard is... that the construction is the same either way. I don't think that it makes a difference. I think that under Phillips or BRI... We've done that many times in the past when we have a situation like this in progress. Yes. So, Google is never... Just real quick, Google has never advocated for a plurality of information sources. There's a fundamental difference between agreeing with the board's construction, which is the spin that Simple Air has put on this, and saying okay, we receive the board's construction, we win under that either way without relinquishing the right to appeal the issue of the plurality of information sources. Second, the board... Simple Air said that the board did not adjudicate this issue below. The board unambiguously adjudicated this issue. It didn't adjudicate the issue in the sense of treating it as a disputed issue. They used plurality. That doesn't excuse waiver if there is waiver and if we choose to apply it. On Appendix 3 390... I'm sorry. On Appendix 293, which is the board's institution decision, it says in the middle of the page after... It says the parties assert that the district court's construction of the terms are consistent with the BRI. Don't think that that's what the board is saying. That's what Google said, but as modified to account for minor differences in language between the claim. The board recognized that there were minor differences or could be minor differences in the claim language. Nonetheless, it went to adjudicate the issue and it cited... If you look at the next page on 295 when it goes to Central Broadcast Server, it cites to the Markman Order. I think we're out of time. Thank you, Mr. Roy. Thank both counsel. The case is submitted.